**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

      Plaintiff,

          v.

CRH PLC,

CRH AMERICAS MATERIALS, INC.,

and

POUNDING MILL QUARRY CORPORATION,

      Defendants.

**FINAL JUDGMENT**

WHEREAS, Plaintiff, United States of America, filed its Complaint on June 22, 2018,

the United States and defendants, CRH plc, CRH Americas Materials, Inc., and Pounding Mill

Quarry Corporation, by their respective attorneys, have consented to the entry of this Final

Judgment without trial or adjudication of any issue of fact or law, and without this Final

Judgment constituting any evidence against or admission by any party regarding any issue of fact

or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment

pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain

divestiture of certain rights or assets by defendants to assure that competition is not substantially

lessened;

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.     JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, 15 U.S.C. § 18, as amended.

## II.     DEFINITIONS

As used in this Final Judgment:

A.     "Acquirer" means Salem Stone or another entity to which defendants divest the Divestiture Assets.

B.     "CRH" means defendant CRH plc, an Irish public limited company with its headquarters in Dublin, Ireland, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

2

C.      "CRH Americas" means defendant CRH Americas Materials, Inc., a Delaware corporation with its principal place of business in Atlanta, Georgia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D.      "Pounding Mill" means defendant Pounding Mill Quarry Corporation, a Virginia corporation with its headquarters in Bluefield, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

E.      "Salem Stone" means Salem Stone Corporation, a Virginia corporation with its headquarters in Dublin, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

F.      "Closing" means the closing of the transaction between CRH Americas and Pounding Mill pursuant to which CRH Americas acquires the assets of Pounding Mill.

G.      "Divestiture Assets" means all assets associated with or utilized by Pounding Mill's Rocky Gap quarry, including, but not limited to:

      1.      All real property, including:

           (a)      All real property that is subject to the deed of record dated December 14, 1991, and registered in Bland County, Virginia in Deed Book 134, Page 138, less and except the right of way of the Norfolk and Western Railway as described in the deed recorded in Deed Book 20, Page 586; and those properties described in deeds

recorded in Deed Book 21, Page 77; Deed Book 31, Page 478;

Deed Book 32, Page 388; and Deed Book 53, Page 220;

(b)   All real property that is subject to the deed of record dated July 8,

1989, and registered in Bland County, Virginia in Deed Book 99,

Page 626, except the property described in the deed recorded in

Deed Book 34, Page 295; and

(c)   All real property that is subject to the deed of record dated

February 8, 2017, and registered in Bland County, Virginia under

Instrument Number 170000077, except those properties described

in deeds recorded in Deed Book 53, Page 334; Deed Book 53,

Page 360; Deed Book 57, Page 138; Deed Book 59, Page 96; Deed

Book 59, Page 98; Deed Book 61, Page 397; Deed Book 62, Page

171; Deed Book 60, Page 653; and Deed Book 62, Page 168.

2.   All tangible assets that have been primarily used at or in connection with

the Rocky Gap quarry at any time since July 31, 2016, including, but not limited to:  all

equipment, vehicles, and buildings; tooling and fixed assets, personal property, inventory, office

furniture, materials, and supplies; geologic maps, core drillings, and core samples; aggregate

reserve testing information, results, and analyses; research and development activities; licenses,

permits, and authorizations issued by any governmental organization; all contracts, teaming

arrangements, agreements, leases, commitments, certifications, and understandings, including,

but not limited to, all contracts that have been fulfilled in part or in whole with aggregate

produced at the Rocky Gap quarry; customer lists, accounts, and credit records; repair and

4

performance records, records relating to testing or approvals by the West Virginia Department of Transportation or Virginia Department of Transportation, and all other records;

        3.    All intangible assets that have been primarily used at or in connection with the Rocky Gap quarry at any time since July 31, 2016, including, but not limited to, all patents, licenses, sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures, research data concerning historic and current research and development, quality assurance and control procedures, design tools and simulation capability, and manuals and technical information defendants provide to their own employees, customers, suppliers, agents, or licensees.

### III.    APPLICABILITY

    A.    This Final Judgment applies to CRH, CRH Americas, and Pounding Mill, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

    B.    If, prior to complying with Section IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the Acquirer of the assets divested pursuant to this Final Judgment.

## IV.   DIVESTITURE

A.     CRH and CRH Americas are ordered and directed, within ten (10) business days after the Court signs the Hold Separate Stipulation and Order in this matter to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances.  Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.     In accomplishing the divestiture ordered by this Final Judgment, defendants shall offer to furnish to the Acquirer, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine.  Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.     At the option of the Acquirer, defendants shall provide the Acquirer and the United States information relating to the personnel involved in the production and sale of aggregate and asphalt concrete at defendants' locations in:  (1) the following counties in West Virginia: Boone, Clay, Fayette, Greenbrier, Logan, McDowell, Mercer, Mingo, Monroe, Nicholas, Raleigh, Summers, and Wyoming; and (2) the following counties in Virginia: Bland, Buchanan, Giles, Russell, and Tazewell, to enable the Acquirer to make offers of employment. Defendants shall not interfere with any negotiations by the Acquirer to employ any employee of CRH, CRH Americas, or Pounding Mill at any of the defendants' operations located in the

counties listed in this paragraph.  Defendants shall waive all non-compete agreements for any

employee who elects employment with the Acquirer.

        D.      Prior to Closing Pounding Mill shall, and after Closing CRH and CRH Americas

shall, permit prospective Acquirers of the Divestiture Assets to have reasonable access to

personnel and to make inspections of the physical facilities of the Rocky Gap quarry; access to

any and all environmental, zoning, and other permit documents and information; access to any

aggregate reserve estimates and geological studies; and access to any and all financial,

operational, or other documents and information customarily provided as part of a due diligence

process.

        E.      Pounding Mill shall ensure that each asset is operational on the date of Closing

and that there are no material defects in the environmental, zoning, or other permits pertaining to

the operation of each asset as of the date of Closing.

        F.      CRH and CRH Americas shall warrant to the Acquirer that each asset will be

operational on the date of sale of the Divestiture Assets and that there are no material defects in

the environmental, zoning, or other permits pertaining to the operation of each asset on the date

of sale of the Divestiture Assets.

        G.      Defendants shall not take any action that will impede in any way the permitting,

operation, or divestiture of the Divestiture Assets.

        H.      Defendants shall not undertake, directly or indirectly, any challenges to the

environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

        I.      Unless the United States otherwise consents in writing, the divestiture, whether

pursuant to Section IV or V of this Final Judgment, shall include the entire Divestiture Assets,

7

and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business involved in the production and sale of aggregate.  The divestiture, whether pursuant to Section IV or V of this Final Judgment,

> (1)    shall be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the production and sale of aggregate; and

> (2)    shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between the Acquirer and CRH give CRH the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

J.      Within ten (10) calendar days of the date of sale of the Divestiture Assets to the Acquirer, CRH shall provide a notification of the divestiture to all customers that purchased:   (1) 500 tons or more of aggregate per project from CRH Americas' Alta quarry, CRH Americas' Beckley quarry, or any Pounding Mill quarry since January 1, 2016; or (2) 2,000 tons of aggregate or more per project from CRH Americas' Alta quarry, CRH Americas' Beckley quarry, or any Pounding Mill quarry since January 1, 2014.  The notification must be in a form approved by the United States, in its sole discretion, and shall state that the Divestiture Assets are now owned by the Acquirer, are not affiliated with CRH, CRH Americas, or Pounding Mill, and shall include with such notice a copy of this proposed Final Judgment.  CRH shall provide the United States with a copy of its draft notice no fewer than five (5) calendar days before it is sent to customers.

## V.    APPOINTMENT OF DIVESTITURE TRUSTEE

A.    If CRH and CRH Americas have not divested the Divestiture Assets within the time period specified in Paragraph IV(A), they shall notify the United States of that fact in writing.  Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.    After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets.  The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.  Subject to Paragraph V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of CRH and CRH Americas any investment bankers, attorneys, or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.  Any such investment bankers, attorneys, or other agents shall serve on such terms and conditions as the United States approves including confidentiality requirements and conflict of interest certifications.

C.    Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance.  Any such objections by defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

9

D.     The Divestiture Trustee shall serve at the cost and expense of CRH and CRH Americas pursuant to a written agreement, on such terms and conditions as the United States approves including confidentiality requirements and conflict of interest certifications.  The Divestiture Trustee shall account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to CRH and CRH Americas and the trust shall then be terminated.  The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.  If the Divestiture Trustee and CRH and CRH Americas are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.  The Divestiture Trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to CRH, CRH Americas, and the United States.

E.     Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture.  The Divestiture Trustee and any consultants, accountants, attorneys, and other agents retained by the Divestiture Trustee shall have full and

10

complete access to the personnel, books, records, and facilities of the business to be divested, and defendants shall develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F.      After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth: (1) the Divestiture Trustee's efforts to accomplish the required divestiture; (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished, and (3) the Divestiture Trustee's recommendations. To the extent such report contains information that the Divestiture Trustee deems confidential, such

11

report shall not be filed in the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

      H.     If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Divestiture Trustee.

## VI.   NOTICE OF PROPOSED DIVESTITURE

      A.     Within two (2) business days following execution of a definitive divestiture agreement, CRH and CRH Americas or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the Divestiture Trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

      B.     Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the Divestiture Trustee

shall furnish any additional information requested within fifteen (15) calendar days of the receipt

of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20)

calendar days after the United States has been provided the additional information requested

from defendants, the proposed Acquirer, any third party, and the Divestiture Trustee, whichever

is later, the United States shall provide written notice to CRH and CRH Americas and the

Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture.

If the United States provides written notice that it does not object, the divestiture may be

consummated, subject only to defendants' limited right to object to the sale under Paragraph

V(C) of this Final Judgment.  Absent written notice that the United States does not object to the

proposed Acquirer or upon objection by the United States, a divestiture proposed under Section

IV or V shall not be consummated.  Upon objection by defendants under Paragraph V(C), a

divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII.   FINANCING

Defendants shall not finance all or any part of any purchase made pursuant to Section IV

or V of this Final Judgment.

## VIII.   HOLD SEPARATE

Until the divestiture required by this Final Judgment has been accomplished, CRH and

CRH Americas shall take all steps necessary to comply with the Hold Separate Stipulation and

Order entered by this Court.  Prior to the Closing, Pounding Mill shall take all steps necessary to

comply with the Hold Separate Stipulation and Order entered by this Court.  Defendants shall

take no action that would jeopardize the divestiture ordered by this Court.

## IX.   AFFIDAVITS

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and

every thirty (30) calendar days thereafter until the divestiture has been completed under Section

IV or V, defendants shall deliver to the United States an affidavit signed by each defendant's

Chief Financial Officer and General Counsel, which shall describe the fact and manner of

defendants' compliance with Section IV or V of this Final Judgment.  Each such affidavit shall

include the name, address, and telephone number of each person who, during the preceding thirty

(30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into

negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the

Divestiture Assets, and shall describe in detail each contact with any such person during that

period.  Each such affidavit shall also include a description of the efforts defendants have taken

to solicit buyers for the Divestiture Assets, and to provide required information to prospective

Acquirers, including the limitations, if any, on such information.  Assuming the information set

forth in the affidavit is true and complete, any objection by the United States to information

provided by defendants, including limitation on information, shall be made within fourteen (14)

calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter,

defendants shall deliver to the United States an affidavit that describes in reasonable detail all

actions defendants have taken and all steps defendants have implemented on an ongoing basis to

comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United States

an affidavit describing any changes to the efforts and actions outlined in defendants' earlier

affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

      C.     Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X.    **COMPLIANCE INSPECTION**

      A.     For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Hold Separate Stipulation and Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, Antitrust Division, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

         (1)    access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

         (2)    to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.     NOTIFICATION

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), CRH and CRH Americas, without providing advance notification to the United States Department of Justice, Antitrust Division, shall not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, equity or

16

management interest, in any businesses involved in the production and/or sale of aggregate and/or asphalt concrete in the counties listed in Paragraph IV(C) during the term of this Final Judgment.

Such notification shall be provided to the United States Department of Justice, Antitrust Division in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 8 of the instructions must be provided only for aggregate and/or asphalt concrete. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within the 30-day period after notification, representatives of the United States Department of Justice, Antitrust Division make a written request for additional information, defendants shall not consummate the proposed transaction or agreement until thirty calendar days after submitting all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

## XII.   NO REACQUISITION

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

17

## XIII.   RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.   ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including its right to seek an order of contempt from this Court. Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and they waive any argument that a different standard of proof should apply.

B.      The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In any enforcement proceeding in which the Court finds that defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate.  In connection with any successful effort by the United States to enforce this Final Judgement against a defendant, whether litigated or resolved prior to litigation, that defendant agrees to reimburse the United States for any attorneys' fees, experts' fees, and costs incurred in connection with that enforcement effort, including the investigation of the potential violation.

## XV.   EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and defendants that the divestiture has been completed and that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XVI.   PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date:   11/28/18

Court approval is subject to procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C.

§ 16.

United States District Judge